Dear President Jenkins:
You have requested the opinion of this office on several issues related to a planned second phase of a student housing development at the University of New Orleans using the developer who was selected by a request for proposals (RFP) process for phase one of that development in 1995. The questions you have posed are:
 1. Whether the proposed agreement with the developer selected in 1995 complies with the requirements of R.S. 17:3361A(5) as amended by Act 167 of the 1999 Regular Session;
 2. Whether Housing Partnership III, Ltd. has been chosen for this second phase pursuant to a "competitive proposal process"; or
 3. Whether the 1999 amendment incorporated by Act 167 which became effective in July, 1999 is applicable to this proposed project which had already been recommended by the University and approved in concept by the LSU Board of Supervisors and the Board of Regents well before the enactment of Act 167.
I have reviewed the extensive documentation which you provided detailing the original RFP and the proposal by Century Development, together with the land lease and minutes of the Board of Supervisors and Board of Regents approving Phase II of the housing development. You have also furnished this office with a proposed amendment to the original ground lease to incorporate Phase II.
La. R.S. 17:3361 provides LSU with the authority for transactions such as the Phase I and Phase II student housing developments. Previous opinions of this office have dealt extensively with the legality for such developments and the requirements of other provisions of Louisiana law for such transactions. See Opinion Numbers 93-555 and 95-232. Prior to the enactment of Act 167 of 1999 there was no process required by R.S. 17:3361 for the selection of a developer for leases such as that involved in the proposed transaction. Still, LSU chose to use the RFP process to select a developer when Phase I of this project was undertaken in 1995. The process appears to have been detailed, comprehensive and fair. Five proposals from developers doing business on a national basis were received and considered by LSU. Century Development, which is based in Houston, was the selected developer. As a part of its proposal Century stated, "Century will have a right of first refusal to build a Phase II privatized apartment project on campus land if construction starts within 5 years of completion of this project." As contemplated by the proposal, Century created a wholly owned subsidiary, Housing Partnership III, Ltd. solely to finance, construct and operate the UNO housing development. Phase I was undertaken in early 1996, satisfactorily completed by Housing Partnership III, Ltd., and is presently being successfully operated by the developer in keeping with the agreement.
The complex nature of the Privateer Place Apartment Complex at UNO reflects some of the reasons why the entire housing development must be considered as one project and why it would be virtually impossible to contract with another developer for Phase II. The site plan provided to us reveals how Phase II wraps around the Phase I site, utilizing the same secured entrance and parking. Some of the facilities in Phase I will be utilized by residents of Phase II and some of the facilities of Phase II will be utilized by residents of Phase I. Since the existing and anticipated agreements call not only for construction of the improvements but for comprehensive operation and maintenance of the complex by the Developer during the entire 40 year term of the agreement, it would be virtually impossible to allocate rights, rents, and responsibilities among two developer-operators.
Pursuant to the authorizing statutes the LSU Board of Supervisors on January 23, 1998 authorized the system president "to negotiate and execute an agreement with Housing Partnership IV, Ltd. for the financing, construction, operation and maintenance of Phase II of Privateer Place Apartment Complex on the University of New Orleans Campus for a period not to exceed forty (40) years and to include in said agreement terms no less favorable than the terms of Phase I. . . ." It was later determined that the appropriate Century Development subsidiary for Phase II would be Housing Partnership III, Ltd. This new phase of the housing project was approved by the Board of Regents on June 25, 1998 and negotiations with Century Development and draft agreements for the transaction have been in process since that time.
Act 167 of 1999 amends R.S. 17:3361A to read:
 A. Each board may grant leases of any portion or portions of the grounds or campus of any college or university of other immovable property under its supervision and management, for a term not to exceed ninety-nine years for each lease, to any of the following:
 * * * * *
 (5) A private entity, provided such private entity shall be obligated under the terms of the lease agreement to construct improvements on the leased premises which will further the educational, scientific, research, or public service functions of the board and provided further that the private entity has been selected pursuant to a competitive bid or competitive proposal process. (Bolded language is that added by Act 167.)
This brings us to the above stated specific issues which you have raised.
 1. Does the proposed Phase II amendment to the 1995 lease comply with the requirement of Act 167 of 1999 for award of such agreements by competitive bid or competitive proposal process?
We feel that it does. R.S. 17:3361A authorizes LSU to lease immovable property to a private entity which is obligated under the lease to construct improvements which will further one of the missions of the university, provided "that the private entity has been selected pursuant to a competitive bid or competitive proposal process." Century Development (the private entity), was selected by a competitive proposal process in 1995, thereby complying with the requirement for such a process, even though it was not required at the time. That process anticipated in general terms the possible development of a Phase II expansion to provide additional housing units.
 2. Has Housing Partnership III, Ltd. been chosen for this second phase pursuant to a "competitive proposal process"?
It has. The 1999 addition to the statute simply requires that "the private entity has been selected pursuant to a competitive bid or competitive proposal process." It does not explicitly require that each aspect and phase of a project be put through the competitive process. If that result had been intended by the legislature, it would have been a simple matter to draft broader language. It is likely that there was an understanding that such projects may be done in stages or may require revision after a developer is selected and an agreement is reached. The apparent objective was to assure that there would be an open and competitive process utilized to select a responsible, reputable, experienced and reliable developer for such projects. In any such major project there are likely to be significant changes in scope, design and costs.
It is unnecessary to address your third issue in the light of the answers to questions 1 and 2, above.
Therefore, it is our opinion that LSU may proceed to contract with Century Development, through its subsidiary Housing Partnership III, Ltd. for Phase II of the Privateer Place Apartment Complex based on their prior selection by a competitive proposal process.
We hope that this adequately responds to your request. Please let me know if we may be of any further assistance in this matter.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: GLENN R. DUCOTE
Assistant Attorney General
RPI:GRD:jv